# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2014

## DERRICK CAMPBELL v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Rutherford County
### No. F67160    Mitchell Keith Siskin, Judge

### No. M2013-02567-CCA-R3-PC - Filed December 9, 2014

Petitioner, Derrick Devon Campbell, pleaded guilty to second degree murder with an agreed sentence of thirty years at Range II to be served at one-hundred percent as a violent offender. Petitioner now appeals the trial court's denial of his petition for post-conviction relief, in which he alleged that his trial counsel was ineffective for failing to properly explain his plea agreement and the consequences of the plea. Having reviewed the record before us, we affirm the judgment of trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Benjamin L. Parsley, III, Murfreesboro, Tennessee, for the appellant, Derrick Devon Campbell.

Herbert H. Slatery, III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Jennings Jones, District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Background**

*Guilty Plea Submission Hearing*

The facts of Petitioner's case as recited by the State at the guilty plea submission hearing are as follows:

[T]he State would introduce witnesses to include Detective Tannas Knox as well as other members of the Murfreesboro Police Department and other civilian witnesses who the State would believe would testify as follows. That on or about July 14th, 2009, that they received a call to 1320 Peachtree Street here in Rutherford County, State of Tennessee, regarding someone kicking a door in and shooting someone inside the house. When the police got there they did see a female victim who was later identified as Valerie Campbell who was in the process of escaping through the bedroom window. She did have a gun in her hand which was her gun. And she was screaming. They did approach her. Then gained entry into the house. While inside the house they did observe that the victim, Mr. Christopher White, had been shot. It was later determined that he had been shot a total of three times. They also determined that there was another victim. Ms. Valerie Britton. Who is the mother of Valerie Campbell. That she was in the other bedroom and that at some point she did witness part of this transaction and had escaped there to escape any possibility of injury. She was there as well. Mr. Campbell apparently had made a phone call or a couple of phone calls before then. He expressed some concern that his wife at that time was with some other person. Apparently from what we've learned the wife did express that yes, maybe someone was there, but he was just there as a friend. And then that there were other phone calls saying that Mr. Campbell may be on the way. But from the autopsy it was clear that he was shot a total of three times. The victim was not armed and his body was found on the couch where he was seated at a place where the witnesses would say he was when the door was kicked in.

*Post-conviction hearing*

Petitioner was represented on the original charges by two attorneys with the public defender's office. They will be referred to herein as "trial counsel" and "co-counsel." Trial counsel testified that he had worked at the public defender's office for twenty-one years. He was appointed to represent Petitioner in circuit court, and he first met with Petitioner on December 15, 2009. They discussed Petitioner's charges and the penalty ranges. Petitioner was originally charged with two alternative counts of first degree murder, aggravated burglary, two counts of aggravated assault, and felony possession of a weapon. Trial counsel and co-counsel met with Petitioner at least five additional times, and they discussed discovery, trial strategy, and any offers made by the State. Trial counsel also wrote four letters to Petitioner.

Trial counsel testified that on November 11, 2010, Petitioner advised trial counsel and co-counsel that he wanted to accept the State's plea offer to second degree murder with an agreed sentence of thirty years at one-hundred percent. Petitioner had rejected previous offers because he wanted an offer that was less than second-degree murder. Trial counsel testified that he discussed the consequences of the plea with Petitioner, and he explained to Petitioner the meaning of pleading "out of range." Trial counsel further explained the difference between one-hundred percent and thirty percent service of the sentence. Concerning the plea offer, trial counsel testified:

> In fairness, I think that was an offer that had been open for some time. And we had probably talked to him in previous meetings in regard to it. But on [November 11, 2010] when he indicated that he was going to accept that plea, we talked about the consequences of - - we talked once again about it. And the fact that it would be a 100 percent crime, that he would be required to serve 100 percent of it.

Trial counsel testified that Petitioner never seemed confused about the plea offer. He further testified:

> My impression was [Petitioner] was an intelligent individual - - competent and intelligent individual, despite the fact that we had asked for a forensic evaluation as a precaution. And that he fully understood what he was charged with, what the state would have to prove, and what he was asking us to present to the State, and what the possibilities were as far as any trial was concerned. And as he was aware of what his offer was to settle the case.

On cross-examination, trial counsel testified that Petitioner was fully aware that he was pleading guilty with an agreed sentence of thirty years at one-hundred percent. Petitioner also fully understood that he was pleading "out of range" as a Range II offender rather than as a Range I offender, which his prior criminal record would have mandated if he had been sentenced for second degree murder without a plea agreement to avoid a first degree murder conviction. Trial counsel agreed that Petitioner faced a potential sentence of life plus additional years, with at least fifty-one years to be served at one-hundred percent. Trial counsel testified that Petitioner never denied killing the victim, and there did not seem to be any evidence of self-defense. Trial counsel believed that the evidence in Petitioner's case supported first degree murder.

Trial counsel testified that Petitioner signed the judgment form reflecting that he was sentenced to thirty years at one-hundred percent, and Petitioner signed the plea agreement indicating that his sentence would be thirty years at one-hundred percent for second degree

murder. Trial counsel testified that he reviewed the plea agreement with Petitioner and explained the range of punishments to him and any consequences of the plea.

Co-counsel testified that he had been employed by the public defender's office for twenty-four years. Concerning Petitioner's guilty plea, co-counsel said:

> We discussed the 30 years. We discussed the relative merits of what could happen if he didn't take that offer and went over what the offer was. I think he at that point decided that he didn't want to take a chance on getting something worse, and decided that he would go on and enter a plea and take the [thirty-year] sentence.

Co-counsel was sure that he discussed the meaning of a thirty-year sentence at one-hundred percent.

On cross-examination, co-counsel was confident that Petitioner understood exactly what he was pleading to, the ramifications of the sentences, and any possible defenses. Co-counsel said:

> Oh, absolutely. We - - as I say, between the two of us, [trial counsel] and I had met with [Petitioner] on many occasions. We had discussed everything. We would discuss the relative - - you know, this is what could happen to you. I know my - - personally, I always present them a worst case scenario and say, you know, if everything went completely wrong and you were sentenced to the maximum and you got consecutive sentencing, et cetera, et cetera, this is what could happen. That is the best that could happen to you.

> You know, I have never told a client in 25 years of doing this that they had to enter a plea of guilty. My job is just simply to tell them these are the options that are available to you. This is what could happen. This is what's on the table.

> I feel perfectly confident, having met with [Petitioner], I believe on the night before he entered the trial, with [trial counsel], in conjunction with him, that we would have fully informed him and said this is your decision. May have given him my opinion about what I though he should have done. But he, I thought, was capable of making that decision and did make that decision.

And I believe today that one of the worst things that could happen to him would be for his deal to get overturned because he was facing so much - - so much more.

Co-counsel testified that if he had any doubts about Petitioner pleading guilty, he would have made the trial court aware of the situation and would have asked that the plea not proceed.

Petitioner testified that he did not recall the initial plea offer by the State. He remembered an offer of life without parole. Petitioner testified that trial counsel later approached him with an offer of twenty-five years. He claimed:

Yeah. [Trial counsel] came down there and offered me 25 years. And I - - because I had told my dad to call him or something. And he came down to the jail like, I think it was the day before I c[a]me to court. And he told me they was going to offer me 25 years. And I was like, I'll take it.

And when I got up here, we went in that room back there. And he was like, well, they are going to offer you 30 years and - - for this reason. It was something or another. I don't even remember the exact conversation. I just remember he changed the plea.

Petitioner testified that trial counsel told him that the plea offer was for twenty-five years at one-hundred percent service. However, it was later changed by trial counsel to thirty years at one-hundred percent service.

Petitioner testified that he felt coerced into accepting the plea offer because trial counsel and co-counsel were not helping him, and they told him that it was in his best interest to accept the plea offer. Petitioner testified that he accepted the plea offer because his family could not afford to take a week off from work to attend his trial. He said, "I took this time all for the wrong reasons. Not for me." Petitioner further testified: "[Trial counsel and co-counsel] told me I needed to take this time. That's a better deal - - that's the best deal I'm going to get. But I just knew they wasn't going to fight for me if I went to trial." Petitioner admitted that when the judge at the guilty plea acceptance hearing asked if he had any complaints, he said no. He further admitted that the judge told him that his plea was to thirty years at one-hundred percent, and the judgment form that Petitioner signed also clearly indicated thirty years at one-hundred percent. Petitioner acknowledged that he signed the plea agreement that also reflected thirty years at one-hundred percent as a Range II offender. Petitioner ultimately testified that he pled guilty and did not go to trial because he did not want to put his family through the trial.

Concerning Petitioner's claims of deficient performance, the trial court determined:

> This Court finds that the Petitioner has failed to meet his burden of showing, by clear and convincing evidence, that his trial counsel's performance was deficient. Essentially, the Petitioner has asserted that his trial attorneys . . . miscommunicated the State's offer on the eve of his plea hearing. This Court specifically accredits the testimony of [trial counsel] and [co-counsel], and finds that they met and exceeded all standards of competency for criminal defense attorneys in Tennessee and any other state. Additionally, the Court finds that [trial counsel] and [co-counsel] fully apprised themselves of the facts and law applicable to the Petitioner's case, and that they explored all potential strategies and defenses.
>
> *        *        *
>
> Moreover, the transcript of the plea hearing shows that the Petitioner told the trial judge that he was satisfied with his attorneys, and had no gripes or complaints against them. (See Exibit 1, p. 7, 11, pp. 8-9). Although the trial judge apparently misspoke during the plea colloquy by announcing the Petitioner's sentence as "30 years in the state penitentiary as a range one 30 percent offender" (See Exhibit 1, p. 11, II. 16-18), he immediately corrected himself by stating, "As I said this will be 30 years at 100 percent to serve." (See Exhibit 1, p. 12, II. 1-3).

## Analysis

Petitioner argues that trial counsel and co-counsel were deficient for failing to properly explain the plea agreement "in such a way that he understood the magnitude of his entering said plea." Petitioner further argues that trial counsel and co-counsel's " failures to properly explain to [him] the magnitude of him pleading out of range, it prejudiced [Petitioner] in that he did not fully understand the consequences of him pleading guilty." The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases[,]" *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense[,]" *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

> The Petitioner has failed to prove that his trial counsel's performance was deficient in any way. As the Petitioner has failed to meet his burden under the first prong of the Strickland test, it is unnecessary to examine the second prong, and the Petitioner's claim must fail. *See* Goad, *supra*, at 370.

We conclude that the evidence does not preponderate against the trial court's findings that neither trial counsel nor co-counsel were deficient in any of the areas alleged by Petitioner. Therefore Petitioner did not satisfy the first prong of the *Strickland* test. Petitioner did not prove any of his claims by clear and convincing evidence. Both trial counsel and co-counsel testified that they discussed the State's plea offer with Petitioner and

that it was thirty years at one-hundred percent. Trial counsel also explained to Petitioner that Petitioner was pleading out of range and the meaning of pleading out of range, and he also explained the difference between one-hundred percent and thirty-percent service of the sentence. Both trial counsel and co-counsel testified that Petitioner never seemed confused about the plea agreement. Co-counsel was confident that Petitioner understood exactly what he was pleading to, the ramifications of the sentences, and any possible defenses. Trial counsel noted that Petitioner faced a potential sentence of life imprisonment plus more years, with at least fifty-one years to be served at one-hundred percent. Petitioner signed the plea agreement and the judgment form which indicated that he was pleading guilty to second degree murder with a sentence of thirty years at one-hundred percent. Trial counsel specifically testified that he reviewed the plea agreement with Petitioner and explained the ranges of punishment to him and any consequences of the plea.

Petitioner at the post-conviction hearing admitted that trial counsel told him that his sentence would be served at one-hundred percent. Although he claimed that trial counsel originally told him that the offer was for twenty-five years and later changed it to thirty years, this claim was not supported by the record. Petitioner ultimately testified at the post-conviction hearing that he accepted the plea because he did not want to put his family through a trial. This issue is without merit.

For the reasons stated above, we affirm the judgment of the trial court.


_____

THOMAS T. WOODALL, PRESIDING JUDGE